This is the second case of the panel. Please call them. Case number 10-0948, Mark Czapski v. Christopher Warren. All right. Counsel for the appellant. One party. May it please the Court, Counsel, my name is Todd Schenck and I represent Federal Insurance Company. I'd like to hold about five minutes for the bottom of the testimony. Before you start, let me ask you a question. How does a test driver fall under the definition in the various dictionaries of customers? Well, there are various dictionary definitions, but generally they say either a consumer or patron, which a test driver clearly is, or they'll say one who buys something. Just as a seller is one who sells something, a buyer is one who buys something. A test driver is one who buys something. They're a consumer. But that seems to be one of the critical points, whether that buying is a condition preceding, I don't know if I can use that term, but certainly a requirement before that person can be considered to be a customer. That's exactly right. And the cases that we've cited in our brief, they're from around the country. That's an issue that comes up sometimes. But before we get into that, you know, I want to take a look at the dictionary. Let's start off with Black's Law Dictionary. Are you familiar with what they say about this? I don't have it committed to memory, but as I said, generally the definitions are there. Would it surprise you that the latest edition of Black's doesn't even define customer? Would that surprise you? That would surprise me. And would that be to your advantage or not to your advantage? What do you think? I believe it's probably a neutral factor because the task before any court when a term is not defined in an insurance policy is to apply the plain, ordinary, and common usage of a term. A dictionary may be one indicator of what the plain, ordinary, and common usage is, but it's not dispositive. It's just one indicator. People every day use the term customer and they know what it means without consulting a dictionary. So the fact that it's not defined in a particular dictionary really is neither here nor there in my view. You can still have a plain, ordinary, and common definition of a term even if it's not defined in a particular dictionary or in any dictionary at all. Now I have another question for you in another area. If we used the definition of the trial court here, how would your exclusion work if somebody had already made a purchase? That's the key point that I'd like to drive home here today. Every time a court interprets a term in a policy, it has to do so in context. The question isn't what the term customer means in a vacuum. What does it mean in this policy under these facts? This policy was issued to an auto dealer. People come into an auto dealer every day. Many of them take test drives. Only a small fraction buy the car. If this exclusion only applies when someone buys the car, this exclusion has a very, very narrow application to a small subset of people. But even more importantly, you have to look at, well, in the context of this policy as a whole, and trying to give meaning to every term in the policy, that interpretation renders the exclusion. No, but you're not answering my question. My question is if a person already purchased a car, would they be covered under this policy? No, and that's the point I'm trying to get to. In the contractual context of this policy. So really what you're saying is that your position is at the opposite end of their position, or at least of the ambiguous term as the circuit court found it. The circuit court said that the scenario Justice Gordon just pointed out could be a customer or would be a customer. And that's, but you're saying that once a customer buys a car, there's no need for the exclusion. Because the term insurer is defined as someone is motor works itself, and then someone who motor works allows to use a car. So that's my point. So you're saying that customer excludes a person that has already bought a car. It can either exclude it or it's just a subset of the term customer. Because the only way the customer exclusion has meaning. Well, I thought that was Justice Gordon's question. Would a person that buys a car be a customer under the policy? They would be a customer, yes. And so would people who are potential purchasers. And that potential purchaser. But it wouldn't be applicable to them, would it? Would they need that insurance coverage? You would not need to define customer to include people who've completed a purchase. Because they're not insured anyway. Because the car is now no longer owned by motorists. Well, I thought that was Justice Gordon's question. Does customer fall, if somebody buys a car, is that person a customer under the policy? And I thought you said yes. Now you're saying no. No, I'm saying they are. But you wouldn't have to interpret it that way. The only reason. So you're saying they're a customer but not an insured. Yes. And the exclusion would be meaningless. The exclusion would be meaningless if customer is limited to only those who have purchased a car. Because once you purchase a car, you're no longer an insured. And if only customers are excluded and customers are only those who have purchased, the only class of people you're excluding are those who are no longer insureds anyway. You have to expand the definition of customer to include potential purchasers to give the exclusion any meaning at all. Because if potential purchasers who are taking a test drive would qualify as insureds under the policy because MotorWorks still owns the car and they're using it. You mean potential buyers. You don't want to say potential customers. Potential purchasers. Potential purchasers is what I meant to say. Potential buyers. So for the exclusion to have any meaning at all, the term customer has to include potential purchasers. Here's the scenario. Here's the hypothetical. A purchaser from MotorWorks, he has a late model car and goes in there for an oil filter for his car. So he becomes a customer. He becomes a customer. He buys the oil filter. And on the way out, he runs into his salesperson and the salesperson encourages him to take a test drive. Is that person an insured under the policy? He's a customer. He would be an insured because he's permissively using a vehicle owned by MotorWorks,  just the same way Mr. Maher here was an insured because he was using a test drive vehicle permissively and the vehicle was owned by MotorWorks, but he's excluded because he was a customer because he was a potential purchaser. And this whole point that we're getting at, that the only way to have this exclusion have any meaning at all is if the term customer necessarily includes potential purchasers, was recognized by several other courts, and we've cited some of those in our briefs, the American States v. McCann case and the Messina v. Midway case. I mean, we've read all the cases. And the trial court never, in our case, the circuit court never really confronted or addressed this issue. Plaintiffs say, well, it's the fault of the policy drafters if this exclusion is meaningless. No, actually, it would be the direct result or the fault of construing the term customer far too narrowly and limiting it to those who've completed a purchase. Well, isn't one of the arguments of the other side that if there's such a controversy over what is a customer, then it's obviously ambiguous? That's an argument they make, but there's case law over and over again in Illinois and elsewhere that just because a term is disputed by one side or another doesn't make it ambiguous, because otherwise every term in a policy could be rendered ambiguous just because one side says, well, I don't agree with you, and that's not the law. The law says that the courts are allowed to take these disputes and apply the plain, common, and ordinary meaning of the term customer. The last point I'd like to make is simply, what is a plain, ordinary, and common term? We can look at dictionaries. It's one indicator, but judges are supposed to use their common sense as well. If someone walks into a grocery store and starts putting items in a basket, before they've reached the checkout line, they're a customer. If someone goes into a shoe store and starts trying on shoes, before they get to the register with the pair they like, they're a customer, for the very same reason here. Mr. Moffer, who went in interested in buying a new car, talked to a salesperson, asked to take a test drive. The salesperson accompanied him on the test drive. He was a customer when he was on that test drive at the time of the accident, even though he hadn't completed the purchase yet. And if we say, no, he's only a customer after he's completed the purchase, well, then we get back to the same problem that the exclusion has no meaning at all. I'd like to reserve the rest of my time. All right. Thank you. Thank you. Mr. Clark? Kevin Ford on behalf of the FLE. The issue before the court, respectfully, is whether the decision by Judge Mackey, which was based clearly on the dictionary definition, is a reasonable reading. It doesn't have to be the only reading. Was it a reasonable reading? Well, are you suggesting that we owe deference to Judge Mackey? No. Oh, no, not at all. You're reviewing it. I'm just saying that. So why do we have to even decide whether or not his reading was reasonable or not? Well, certainly we had Judge Larson interpret it quite the contrary. Judge Mason. Judge Mason. She worked with me for 100 years. I knew it was one of them. I wasn't sure which one. And this is the first time she was wrong. Let me ask you a question. Since you're on the area of dictionaries, doesn't Black's Law Dictionary, the fifth edition, say one who regularly or repeatedly makes purchases or has business dealings? Isn't that a business dealing when you're test driving a car? I don't think so. I think business dealings is when you sit down and start negotiating it. Well, Mr. Ford, when we're talking about plain, ordinary, common usage of language, let's say Mr. Maher comes through that door, going back to the example counsel for the insurance company brought up, and there are a couple of salesmen sitting there, do you think that they say there's a customer coming through the door, or do you think there's a potential customer coming through the door, or do you say, I mean, what usage? Here's a mark, they say. No, what word would they use? Wouldn't they say, here's a customer for you? I don't know what they'd say. I know what the dictionary says. The dictionary, all the dictionary definitions. But what happened to plain, ordinary, common usage? If that's the common usage, and that common usage is reflected in the policy, why shouldn't we enforce that common usage? Well, the insurance company could have defined customer. They did not. When they don't define a term, and there is a dispute about that term, what courts do is go to the dictionary. That's the first stop. That's a perfect segue, Mr. Ford, because here's the other concern I have. You know, the ambiguous term in an insurance policy is often a point of dispute, but that point of dispute is between the contractor, the two contracting parties, the insured and the insurer. And even though Mr. Maher is an insured, or you claim he was an insured, certainly under the first policy, he really had nothing to do with negotiating the insurance contract itself. The insurance contract was negotiated between MotorWorks and its insurers. So he, Mr. Maher, is to some extent a stranger to that policy and to suggest that we have to interpret it in a favorable manner for his benefit when he really had nothing to do with it at all. The two people that really were concerned about what does customer mean was MotorWorks and the insurance company, not Maher. So I really wonder whether those cases that you're relying on have any application to this particular situation. Well, let me tell you how I would approach it if you want to know. There's nothing in the record as to what MotorWorks thought or designed. But businesses, even individuals who own a car, want people who drive that car to be insured. That is definitely their desire. Now, they say in their reply brief that, which is your point. Well, I've got to stop you again, Mr. Ford, because that's a perfect other segue. Because you have three policies here. You have one policy. Well, then just answer me this question during your discourse here. What do you think those additional policies intended to narrow? Did they intend to narrow the coverage? And if they intended to narrow the coverage, what narrowing of the coverage were they intending to do? Well, here's what I think. There's no evidence of what Motor. Here's what I think you should conclude from reading the documents, which is all you can do, and looking at the circumstances that are before you. Generally, we know that a business would like to have anybody who uses its vehicles insured to the maximum extent that they are insured. I think you can understand that. Now, how do we show it? In this case, in this case, MotorWorks purchased three policies. They purchased a $1 million policy. They purchased a $5 million policy. And they purchased a $10 million policy. Now, in the $1 million policy, there is no exclusion for customer. So they say, well, they had no, MotorWorks had no incentive to insure Maher over what the law required. Why would they insure Maher or any other driver for a catastrophe? I answered it first already. They do because businesses want people who drive their vehicles insured to the maximum they're insured. And it could be illustrated. That doesn't come without a price. Maximizing insurance doesn't come without a price. There are premiums that have to be paid. It could have been a $100 million policy if that argument is. But look what MotorWorks did. Under the law, they had to buy a policy that would cover Maher or any driver $100, $300. That's what the law required. So they say they would have no incentive to pay another penny for insurance for a user of their car. Well, they might have an incentive, but that doesn't mean they have to go along with that. They bought the policy that says what it says, and it excludes customers. But it's an excess policy. Their first policy insured him $700,000 over. There is no reason, there is nothing in this record to indicate that they would, by the same token, they would not intend to have users of their cars insured to the maximum. There is nothing in this record to suggest that MotorWorks did not think that a customer would not, that customer exclusion would exclude. Well, who is excluded under this policy? Who is excluded? You have a number of cases where title hasn't passed, but I think they're a customer where they've initiated the purchase process. There are four or five cases, in fact, that they cite where they've started the paperwork, the deal fell through. Do they have to start the paperwork under your analysis in order to become customers under the policy that's in question? Yes. They have to do something. Besides drive the car. Besides drive the car. There must be much more. Why? Because the dictionary says that it requires a purchase, and you're not driving the car around the block, is it a purchase? It's like window shopping. People say, come on out, come on out and drive our car. That doesn't mean that the person is on its way to a purchase. There's other alternatives, other people who are excluded. Numerous people are repeat buyers. And if you are a repeat buyer, you're a customer. You're excluded. Now, maybe the federal and national, who's no longer in the case, but had the same, it's actually their policy. Maybe they hope to exclude more people, but they didn't. I mean, it's their problem. And it's interesting that this comes after there was at least a decade of cases, like the ones that are cited here, where the dispute about what customer means meant, and they still use the term. So I don't think I have any. What's your strongest case for using customer in the fashion that you want to be used? Well, first of all, I would say what I would like you to do is focus on the rules of construction. You know, this is an exclusion. It has to be clear and very clear and definite that it's excluded. Secondly, I would say there is no case that says including purchasers, limiting customers to people who have purchased, is an unreasonable greeting. There are court cases, and that's their burden here. There are cases that they rely on that say that there are different and preferred greetings that would not require a purchase. But there is no case that says the dictionary definition which requires a purchase is unreasonable, and that's their burden here. Now, the best case... Let me ask you this, just for a moment. They quote all kinds of cases in other jurisdictions where customer would be defined in accordance with their view. What case do you have that shows customer should be defined the way you're telling us? I would say Home Insurance v. McGovern. This case, Home Insurance v. McGovern, is discussed in the McCann case, and the site for that case is 837 F. Supp. 661. No, that case is cited in Couch, which they cited. Home Insurance v. McGovern. Well, do you have a site for that? 837 F. Supp. 661. They cite Couch on insurance in the reply brief. Couch discusses cases that go both ways. Do you have that in your brief? I don't recall that case, Home Insurance v. McGovern. No, it's not in our brief. It's cited by Couch, which was cited in their reply brief. Okay. And in the McCann case, the McCann court discusses a case. McCann is the Kansas case. And that case discusses State Farm v. Bergen, B-U-R-G-I-N, and it disagrees with Bergen. So we can take that cases are available, depending on how they're read, for both sides. I mean, no differently than how the two circuit court judges read this very same term. One said it was ambiguous. The other said it was not. And there are cases that support that position. Bergen said, Bergen, by the way, cite Justice Gordon, is 752 F. Supp. 877. And there's a third case. We're sure we can track down. Spangle v. Farmers, 166 California Pellet 4th, 560, discusses all the cases and shows the confusion. If I, I think Justice Garcia, if I. He has a few more minutes. Do I have time left? Yes, a couple more minutes. You mentioned the two circuit court cases. And I think it's. Two circuit court judges. Two circuit court judges, yes. One of them worked for you. Pardon? Judge Mason. Disagrees with you. Well. As you pointed out, it's the only thing she's been wrong. She's. But. But. Let me explain. I think those two cases are a good illustration of the problem here. But, you know, the way you're reading these cases, you're completely excluding the possibility that there could be a clear distinction between an excess policy and a primary policy. Not a single case discusses any difference. Why do you suppose that's true? Because it's so obvious or because it just. There is no distinction. Because there is no distinction. There's no distinction between an excess policy and a primary policy. A large policy in this case clearly covers. This question here is. It's an exclusion. And whether the exclusion is in an excess policy or a primary policy. No, no cases. Well, wait a while now. Their primary policies, they're required to carry certain kinds of insurance. They're required under the law to carry. Right? Yes. Okay. But is that same? Does that same obligation apply to an excess policy? They weren't required to do this, nor were they required to have their primary. Nor were they required to have their primary go over $300,000. I know, but they were required to carry insurance on this driver, on this test driver, under their primary policy. Yes. And we're not dealing with some sort of repair mechanic or garage. We're dealing with MotorWorks, who deals in high-priced vehicles. And I think they would probably be ridiculed if they had $800,000 or $300,000 policy covering their test drivers. A million dollars, it seems to be consistent with the product they're selling. BMWs, they're thinking $30 million. Maybe $3 million. I think it could have gone higher, but not lower. Because that would be their primary policy. Can I? There is no case. But Justice Cahill's point is that there's a different motivation for an insured to get an excess policy. Not in this record, there's none. All right, well. No, they had a day in court. They said there were no factual issues. May I get back to criticizing Judge Mason? There's no need. No, I want to make this point. I'm not criticizing. I was only, of course, kidding. I want to make this point. When you look at the two decisions, first of all, because this panel, in fact, vacated that decision, there's no judicial force or judicial gloss to that decision. But if you look at the way the transcripts of both proceedings that are part of the record, the way Judge Mackey approached the problem is the right way. He analyzed the standards and the rules regarding interpreting exclusions. He looked at the dictionary and he said, this dictionary definition is reasonable. And said, as long as the dictionary definition is reasonable, then I must follow it, the exclusion falls. And that's the rule. Judge Mason didn't do that. Do you take anything from Justice Gordon's point that customer is not defined in the most recent version of Black's Law Dictionary? Is there anything to that? No, I don't think that. I think it's still defined in many of the other dictionaries. And one last point. They fall back on, in the reply brief, they fall back on the word patron and say, ah, but if you look up patron in the dictionary, patron says somebody who pays for services, someone who's a customer, a regular customer. So I respectfully submit the only question before you is looking to the dictionary and accepting that decision and accepting that definition, is that a reasonable interpretation of customer? And is there, on the other hand, when you look at their burden, can they establish the burden that including everybody who enters the shop within the definition of customer, is that the only reasonable definition? Those are the rules for construing an insurance contract. And I respectfully submit that based on the reading of the contract, Judge Mackey was correct and he should be affirmed. All right. Thank you very much. You know, I want to ask you one more question. You know, in the dictionary, the Webster's Third International under 2A, it says one that patronizes or uses the service as of a library or restaurant or a theater, giving as an example. What do you say about a person who's doing a test drive? Are they patronizing an automobile dealership? I don't think so, no. Because if you look up patronize, patronize says someone who does business with, you know, it gets back to purchasing again. Well, I don't know. Patronizing could mean somebody who walks into a restaurant and uses their washroom. Maybe they're patronizing. Well, that's not what the dictionary says. The I had I want to answer your question correctly. And if I if I could find it quickly. I know what the word patronize says. And if you look in the dictionary, it clearly the dictionary definitions. I was last night. They all come back to purchase. And why don't we take the definitions and dictionaries as being pretty much no different than than the two views taken by the circuit court judges below that some of those terms can be read to mean an actual purchase. And some of those definitions can mean something less. So you're saying we should look at at the dictionary definitions and and find the exclusion. Yes. Judge Mason did not. But if she did, that would establish the ambiguity. All right. Thank you very much. Two good judges come to different conclusions. I'd say the word is ambiguous. All right. Thank you very much for support. Thank you. Briefly, if the term's not defined, the court has to apply the plain, ordinary and common usage. Can look at a dictionary, but that does not matter. Publishers of dictionaries don't trump judges. Dictionaries are not written with respect to any particular context. They're generic. They can't take into account the factual and contractual context in which a term is written. So even if we do have, let's say, two competing definitions in a dictionary, one says you have to complete the purchase. Another says you could be a potential purchaser. And that seems to be pretty conclusive, that it is, in fact, that there is that dichotomy between. I don't concede that. But I think your point is that in the context of this insurance policy, only one definition is reasonable. That's exactly right. If we assume there are two competing definitions, the court has to say, viewed in context, which one is reasonable? If they're both reasonable, then you might have an ambiguity. But if only one is reasonable in context, that's the definition that should be applied. So we're not arguing that a dictionary definition is unreasonable or improper. It's just, well, what particular dictionary definition are you talking about? MotorWorks had no obligation to purchase more than the statutory minimums for its test drivers. It purchased a little bit more, a million dollars, being cautious. Well, who does the excess apply to, the excess policy? Who does it apply to? Just to MotorWorks. Who? Just to MotorWorks. Employees? Any other insured that qualifies under the policy. Customers are carved out of the definition of insured under those excess policies. Yeah, but why would they do that? Because they only want to provide limited coverage as required by the statute, or in this case, they decided to buy a million dollars to be cautious, because these are just customers. It's not their own employees. It's not their own sales people. To some extent, they can't control who comes in the door and who takes the car out for a drive. That's exactly right. The pricing on a policy that covers test drivers is a lot more difficult because you don't know who's coming in. As in this case, you get someone who comes in and drives 100 miles an hour into a pole. So that's a real problem when you're trying to write this policy, because you don't know who's going to get behind the wheel. Therefore, we're asking that the court find that Christopher Maher, and the precise question here is not if anyone walks onto the property of a motor dealer, are they a customer. We have a specific set of facts. Was Christopher Maher, who walked in interested in a car, talked to a salesman, asked to take a test drive, got in the car for a test drive with the salesperson, was he a customer at the time of the accident? That's the question to be answered here. And we submit the only reasonable answer to that question is that he was a customer, and therefore the judgment below should be reversed and the case remanded for judgment in federal statement. Thank you. We thank both sides. The case will be taken under advisory of the courts.